IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAULETTE ELLIS, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | CIVIL ACTION NO. H-02-4795 |
| } | |
| ALLSTATE INSURANCE COMPANY, and } | |
| ALLSTATE TEXAS LLOYD'S COMPANY } | |
| } | |
| Defendants. } | |

**OPINION ON SUMMARY JUDGMENT**

Pending before the court is the Defendant, Allstate Insurance Company's Motion for Summary Judgment. (Doc. 125.)

**I.      Background**

Ellis is the owner of property identified as 7538 Brushwood Drive in Houston, Texas, on which property Ellis maintained a homeowner's policy of insurance through Allstate Texas Lloyd's Inc. and a Standard Flood Insurance Policy ("SFIP") through Allstate Insurance Company, respectively. (Doc. 127, p. 3; Doc. 10, Plaintiff's Amended Complaint, ¶ 5.) The SFIP is found in its entirety at 44 C.F.R. Part 61, App. A(1) (2000 ed.).[1] As Ellis has settled her causes of action against Allstate Texas Lloyd's (Doc. 105), the court limits its discussion to the claims brought only against Allstate Insurance Company (hereinafter "Allstate").

On October 31, 2002, Ellis filed suit against Allstate alleging that it had breached her homeowners insurance policy when it failed to pay the insurance claim Ellis had filed under the SFIP regarding damage resulting from Tropical Storm Allison in June of 2001. (Doc. 1; Doc. 10, ¶ 10.) Plaintiff's SFIP with Allstate provided coverage in the amount of one hundred thousand dollars for the building ($100,000.00) and sixty thousand dollars on the contents located in the insured building ($60,000.00), with a separate thousand dollar ($1,000.00) deductible for building and contents. (Doc. 127, Ellis Depo., Exh. 1, pp. 67-68; "Flood Claim Work Order," Exh. 2.) Pursuant to Article 9(J)(6) of the SFIP, Allstate provided Ellis with an adjuster, Preston Kuhn ("Kuhn"), to assist her with the flood loss claim, who inspected her property on June 17, 2001. (Doc. 127, Ellis Depo. Exh. 1, pp. 73-77, 79; National Flood Insurance Program Preliminary

---

[1]The court notes that Ellis SFIP was effective for the policy period of 12/16/00 - 12/16/01. (Doc. 107-1, p. 7 n.17.)

Report, Exh. 3.) Kuhn determined that the total payable amounts for building damages (after applying the deductible and depreciation) was $44,197.56, and the total amount payable for damaged contents was policy limits of $61,725.48, which actually exceeded policy limits for contents. (Doc. 127, "NFIP Final Report," Exh. 4; "Adjuster's Claim Summary," Exh. 5.) Ellis was paid her policy limits for her damaged contents in the form of two checks for a total of $60,000.00, she negotiated these checks, and she has not made any additional claims in this action under the "contents" portion of her policy. (Doc. 127, Ellis Depo., Exh. 1, pp. 90, 100-101, 104; Checks for Contents, Exh. 9.)

As a result of Kuhn's work, a "Proof of Loss" was sent to the insured for signature for the amount of $104,197.56 ($44,197.56 + $60,000.00), which Proof of Loss was signed by Ellis and returned to Allstate. (Doc. 127, Ellis Depo., Exh. 1, pp. 229-230; Proof of Loss, Exh. 6; Kuhn Letter of August 13, 2001, Exh. 7; Letter Dated August 28, 2001, Exh. 8.) In the letter to Kuhn enclosed with the signed proof of loss, Ellis stated:

> The numbers are in the range we discussed in our last meeting. Though I have a copy of the initial detail Worksheet of Contents and Building, I would like a final copy that corresponds to the final numbers to keep for my records. I usually would not sign anything without seeing the final results, but since you said everything is approved and ready to go, let's do it. I will view the final details later. (Doc. 127, Exh. 8.)

Ellis has stated that she no longer disputes the amount she received under the "Contents" portion of her policy; but she disputes the $44,197.56 she received for "building damages" as this amount, she has testified, was not enough to repair the house. (Doc. 127, Ellis Depo., Exh. 1, p. 104.) Ellis was not granted a permit to rebuild her dwelling, as the City of Houston determined that it was "substantially damaged," and informed her of this determination by letter dated August 15, 2001. (Doc. 139, "Letter of City of Houston," Exh. 6.)

Though Ellis now seeks additional federal benefits or amounts for damages caused by flooding, no Proofs of Loss for amounts beyond the original $104,197.56 was ever submitted by Ellis, and Ellis admitted at her deposition that, to date, she has never submitted any documents (proof of loss, estimates, etc.) to Allstate for additional amounts. (Doc. 127, Ellis Depo. Exh. 1, pp. 99, 146, 155-56.)

## II. Analysis
### A. Legal Standard : Summary Judgment

The movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R.Civ. P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R.Civ. P. 56(e); *Anderson*, 477 U.S. at 256-57. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

"The mere existence of a 'scintilla' of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Furthermore, when the moving party has carried its burden under Rule 56(c), his opponent will not meet its burden by merely showing that there is "some

metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, by "conclusory allegations," *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990), by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). *Liquid Air*, 37 F.3d at 1075. The court does not, however, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (citing *Lujan*, 497 U.S. at 888 (resolving actual disputes of material fact in favor of nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint.... It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege")); *See also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992) (because non-movant bore the burden of proof on the issue of 'adequacy,' movant was not required to show that warning was *not in*adequate, but can point to the absence of evidence.) Even if evidence exists in the record, the court is not required to search for it. Rather, the non-movant *must refer* to such evidence. *Skotak*, 953 F.2d at 915 & n. 7 (*emphasis added*).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1986); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992). The non-movant cannot discharge its burden by offering vague allegations and legal conclusions. *Lujan*, 497 U.S. at 889.

### B.     Analysis of Plaintiff, Paulette Ellis' Claims
#### (i)     Initial Considerations

The court is first met with considerations that must be determined before all other matters. Ellis presently asserts the information provided by Allstate regarding insurance was fraught with "misrepresentations;" but, the causes of action pled by Ellis never dealt with false or fraudulent representations during the *procurement* of her insurance policy. Specifically, although Ellis alleged in her first amended complaint that "information and advice" provided by the insurer was "fraught with misrepresentations" (Doc. 10, ¶ 10), the factual basis of this allegation, as further represented in the complaint consisted of misrepresentations regarding mold or related problems *after* the leak in October 2000 and during November 2000 (*Id.* at ¶¶'s 7 & 9), misrepresentations regarding the water damage *after* Ellis' dwelling was allegedly affected by Tropical Storm Allison in June of 2001 (*Id.* at ¶¶'s 10-12), and/or further misrepresentations in the months following both of these events. (*Id.* at ¶ 13.) The causes of action Ellis alleges are structured to involve Allstate's failure to bring about prompt equitable settlement of claims after

liability became reasonably clear (Texas Insurance Code violations - Article 21.21), Allstate's engagement in false, misleading, and deceptive acts (DTPA violations), its failure to conduct reasonable investigation into Ellis' claims or decision to ignore such claims, negligence in the selection and/or training of its agents (Negligence), and breach of its insuring obligation (breach of contract). (Doc. 10, pp. 2, 4, 6-7.) Furthermore, Ellis admitted at her deposition under oath that she does not recall any conversations with her insurance agent, Mr. Eames, or with anyone at Allstate concerning the initial purchase of her flood insurance policy. (Doc. 140, Ellis Depo., Exh. 1, pp. 51-52, 65-66.)

The court agrees with Allstate that none of the claims in Ellis' First Amended Complaint (Doc. 10, filed January 29, 2003), put at issue anything having to do with the sale of Ellis' flood insurance policy or with that policy's *procurement*. (Doc. 146, p. 3.) The court refuses indirect amendments of the pleadings, "as doing so would undermine Defendant's right to prevail on its motion, which was made only with regard to the then existing versions of [Ellis'] complaint." *Carter v. Castillo*, No. CIV. A. 399CV0047-X, 2000 WL 1753039, at *2 (N.D. Tex. 2000) (citing *Overseas Inns S.A.P.A. v. U.S.*, 911 F.2d 1146, 1151 (5th Cir. 1990)).

#### (ii)     Claims Handling

Construction and interpretation of an insurance contract is purely a question of law for the court to decide. It is well recognized that "[f]ederal law governs disputes over coverage arising under the National Flood Insurance Act of 1968." *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 97 F. Supp. 2d 800, 804 (S.D. Tex. 2000).     Furthermore, the provisions of an insurance policy issued pursuant to a federal program "must be strictly construed and enforced." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998). Nevertheless, as Ellis' claims all center around claims handling, specifically her claims resulting from the damage caused by Tropical Storm Allison, and because she has asserted several state law causes of action, the court must determine whether state law claims relating to the manner in which an insurer handles a claim for federal treasury monies are legally viable in this context - an issue addressed in Allstate's Motion for Judgment on the Pleadings. (*See* Doc. 107-1, p. 8).

The court begins by noting that Congress granted jurisdiction to this court without regard to diversity of jurisdiction or amount in controversy, pursuant to 42 U.S.C. §4072. The instant action involves the claims of an insured under a policy of flood insurance issued pursuant to the National Flood Insurance Act ("NFIA"), 42 U.S.C.A. § 4001 *et. seq.*, and its corresponding regulations. The National Flood Insurance Program ("NFIP") is an operation of the Federal Government administered by the Federal Emergency Management Agency ("FEMA") pursuant to the NFIA, and subsidized by federal taxpayers, with all payments made by federal funds from

the U.S. Treasury. *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161 (3rd Cir. 1998). FEMA promulgates regulations under the National Flood Insurance Act ("NFIA") establishing the terms of a Standard Flood Insurance Policy ("SFIP") which Write-Your-Own ("WYO") insurers may issue. *Spence v. Omaha Indemnity Insurance Co.*, 996 F.2d 793, 794-95 (5th Cir. 1993). Allstate presents itself as a "WYO Program carrier participating in the National Flood Insurance Program ("NFIP"), appearing herein in its fiduciary capacity as the "fiscal agent of the United States," and "at the expense of the federal treasury." (Doc. 107-1, p. 1.)

FEMA has also issued a new regulation which amends an insured's SFIP to now include the following language:

> IX. What Law Governs
> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.) and the Federal common law.

This reguation did not go into effect until December 31, 2000, and the prior provision of the policy stated:

> This policy is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et seq*.) and Federal common law. 44 C.F.R. Pt. 61, App. A(1), Art. 11.

Because the flood insurance program "is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially," the Fifth Circuit Court of Appeals has applied federal law to disputes over the coverage of flood insurance policies, citing the interest in uniformity of decision present in such cases. *West v. Harris*, 573 F.2d 873, 881-82 (5th Cir. 1978). The Court in *West* refused to award penalties and attorneys' fees awarded by state insurance statutes for an insurer's arbitrary refusal of a claim, but relying on federal common law, the court found the mandatory award of prejudgment interest on damages a necessary element of fair compensation to the plaintiff for his loss covered by the flood policy. *Id*. at 879, 882, 883-84.

In a later decision, while admitting *West*'s conclusion that federal common law governs contract claims under flood insurance policies, the Court of Appeals in *Spence* noted the same principle did not apply, or the federal interest was more attenuated, in tort actions for misrepresentation against WYO insurers; the Court of Appeals premised its reasoning on the substantial autonomy in marketing and claims adjustment granted to WYO companies by FEMA regulations, on the fact that WYO insurers were not expressly agents of the federal government[2],

---

[2]Though WYO insurers such as Defendant, Allstate, are termed the "fiduciary" or "fiscal agent" of the United States. *See* 44 C.F.R. §62.23(f); 42 U.S.C. §4071(a)(1).

and the fact that WYO companies could not draw on FEMA letters of credit as funding to pay for liability for fraud. *Spence*, 996 F.2d at 796.

In its unpublished opinion, *Richmond Printing LLC v. FEMA*, the Fifth Circuit noted its stance from *Spence,* that misrepresentation claims were in effect, extracontractual, and hence not preempted, and the Court refused to draw a distinction between claims arising from misrepresentation in the procurement of an SFIP and claims from misrepresentation in the adjustment of a claim under an SFIP. 72 Fed. Appx. 92, 95-96, 2003 WL 21697457, at *3-4 (5th Cir. 2003). Nevertheless, as acknowledged in *Larmann v. State Farm Ins. Co.*, the Court of Appeals in *Richmond* held that the plaintiff's misrepresentation claims in that case were barred because the plaintiff's reliance on the adjustor's representations was unreasonable. No. Civ.A. 03-2993, 2005 WL 357191, at * 4 (E.D. La. Feb. 11, 2005) (citing *Richmond*, 2003 WL 21697457 at * 97). The court in *Richmond* based its conclusion of 'unreasonable reliance' on the longstanding principle that citizens are charged with knowledge of the law regarding federal insurance, especially when the terms of such insurance policies were published in the federal register, as the terms of the SFIP are, and the Court emphasized that "those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law." *Richmond*, 2003 WL 21697457 at * 97-98 (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947); *Heckler v. Community Health Servs.*, 467 U.S. 51, 63 (1984)).

The court agrees with the persuasive reasoning in *Richmond* and in *Larmann* and finds that even if Ellis' claims for negligent and fraudulent misrepresentation, violations of the Texas Insurance Code, Art. 21.21, and for Deceptive Trade Practices Act Violations (§§'s 17.46 and 17.50(a)(4) of the DTPA) are not preempted, they cannot succeed as a matter of law and summary judgment is necessary in light of *Merrill* and *Heckler*.

Pre- and post-judgment interest is also obviously not available in the absence of an award of damages, but the court notes that such awards would not be obtained in any event. Though the Court in *West* concluded that Federal common law required prejudgment interest to be awarded on damages, the Court in *In re Estate of Lee v. NFIP* noted that in transferring administration to "Part B" of the NFIA, 42 U.S.C. §§ 4071-72, wherein FEMA now adjusted and paid claims, a suit against FEMA was a suit against the Federal government and interest awards could not be awarded. 812 F.2d 253, 256 (5th Cir. 1987). Furthemore, many courts treat suits against a WYO company as a suit against FEMA for several reasons, first (1) because WYO's are "fiscal agents" of FEMA (citing 42 U.S.C. § 4071(a)(1)), (2) because FEMA regulations require a WYO company to defend claims but assures that FEMA will reimburse the WYO company for defense costs (citing 44 C.F.R. § 62.23(i)(6)), and (3) because an insured's flood insurance claims are ultimately paid by FEMA. *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 166 (3rd

Cir. 1998). Furthermore, a representative of the Texas Department of Insurance has admitted that Texas state law does not regulate SFIP's, and to the extent Ellis' claims deal with her SFIP, they would involve questions of federal law.[3] Hence, the Texas Insurance Code and Deceptive Trade Practices Act are inapplicable.

Any effort by Ellis to hold the adjuster liable in negligence would also fail. *See Sanz v. U.S. Security Ins. Co.*, 328 F.3d 1314, 1319-20 (11th Cir. 2003) ("The applicable regulation states specifically that [the insurer] is not required to provide [plaintiff] with a proof of loss or assist him in filling one out."). Further, as Article 9(J)(6) of the SFIP states that:

> The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a Proof of Loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.
>
> In completing the proof of loss, you must use your own judgment concerning the amount of loss and the justification for that amount.
>
> The adjuster is not authorized to approve or disapprove claims or tell you whether your claim will be approved by us. 44 C.F.R. Pt. 61, App. A(1), Art. 9(J)(6) (2000 ed.)

Ellis' responsibility to fill out an accurate Proof of Loss remains paramount.

Ellis' remaining claims seem to concern whether or not she is entitled to more money than was allowed in her originally filed proof of loss. She also makes several additional minor complaints, but does not cite the record to support any of her assertions. For example Ellis asserts, but does not explain with citation to the record, that she was subject to a $1000.00 deductible per both contents and structure ($2000.00, in total), but that she was in fact charged a deductible of $3,225.48. (Doc. 139-1, p. 8, ¶ 21.) The court notes that it believes Ellis intends to assert a figure of $3,**7**25.48, the "725.48" of which was apparently deducted for exceeding the limit of content coverage; i.e., $61,725.48 exceeded $60,000.00, by $1,725.48 - the remaining thousand dollars ($1,000.00) exceeding the limit was part of the $2000.00 deductible. (Doc. 127, Exh. 4.) Ellis' asserted 3,000.00 deductible is, otherwise, completely unexplained.

More importantly, Ellis asserts in her opposition to Allstate's Motion for Summary Judgment, without citation to evidentiary support, that she "disagreed with [the] value determinations on the proof of loss." (Doc. 139-1.) However, she does not describe to the court how those value determinations are incorrect, nor the legal relevance of that mistake for her causes

---

[3] "I am aware that the TDI does not regulate the SFIP under the National Flood Insurance Program. . . . Further, I am aware that it is the TDI's position that the provisions of the Texas Insurance Code do not apply to an insurer issuing a SFIP under the National Flood Insurance Program." *Jamal*, 97 F. Supp. 2d at 805 (quoting statement of "Larry Dunbar, Manager of the Homeowner's Division of the Texas Department of Insurance").

of action.  While the court does not weigh the evidence when considering summary judgment arguments, it is unopposed in the record that in Ellis' letter to adjuster Kuhn on August 28, 2001, she stated "[t]he numbers are in the range we discussed in our last meeting."  (Doc. 127, Exh. 8.) Ellis does not assert that the numbers are wholly incorrect or completely off base, nor does she mention to Kuhn the notice from the City of Houston, dated August 15, 2001, which informed her that her dwelling was considered substantially damaged.  (Doc. 139-1, Exh. 6.)  Given that Ellis was apparently afforded an additional 60 days to file her proof of loss, along with others affected by Tropical storm Allison (Doc. 139-4, Exh. 5), there is no explanation provided for why she did not use the increased time to field her additional complaints with Allstate.  Nor has Ellis explained, or cited the court to evidence explaining, why she did not file another proof of loss or, in fact, what additional amount of monies she is now seeking which was not addressed in the original proof of loss.  (Doc. 127, Ellis Depo., Exh. 1, pp. 99, 146, 155-56.)  She asserts simply that she is entitled to damages in the amount of $350,000.00.  (Doc. 129, p. 1.)

If there is no timely, signed and sworn Proof of Loss in support of a claim for damages, the insured has failed to preserve her claim and cannot recover as a matter of law. *Gowland*, 143 F.3d at 954 (failure to comply with the proof of loss requirement "relieves the federal insurer's obligation to pay what otherwise might be a valid claim"); *See also Forman v. FEMA*, 138 F.3d 543, 545 (5th Cir. 1998). The policy required the filing of a proof of loss within 60 days.  Furthermore, Article 9(R) of the SFIP policy states in pertinent part

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy.

Hence, as Ellis has filed neither proof of loss nor any documentation for any additional amounts she may now claim under her SFIP, she has failed to comply with Article 9(J)(6) and her claims for additional monies must be dismissed.  Furthermore, though the court would not treat her additional claims as 'supplemental' claims, even if such are supplemental, they are barred as stated in *Dogwood Grocery, Inc. v. South Caroline Ins. Co.*:

> Furthermore, although Plaintiff suggests that the terms and conditions of the flood insurance policy contemplate an adjustment procedure which might justify the subsequent amendment of a claim, Plaintiff provides no authority and the court finds none to support the proposition that a claim which has been adjusted and for which payment has been offered and accepted may be resubmitted upon subsequent discovery of additional facts.  Taken together with the congressional directive of strict enforcement and construction, this court is unwilling to create such a provision.  49 F. Supp. 2d 511 (W.D. La. 1999).

Therefore, the court will not allow supplemental claims.

Therefore, the court finds that Ellis claims are either inapplicable or inappropriate as a matter of law and must be dismissed, or must also be dismissed as a matter of law on the unopposed factual record supplied to the court. Accordingly, it is hereby

ORDERED that Defendant, Allstate Insurance Company's Motion for Summary Judgment (Doc. 125) is GRANTED; and, it is further

ORDERED that in light of granting Allstate Insurance Company's Motion for Summary Judgment, all other pending motions are now MOOT.

SIGNED at Houston, Texas, this 13th day of May, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE